UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERT HAYES,<br><br>    Plaintiff,<br><br>    v.<br><br>SCOTT KERNAN, et al.,<br><br>    Defendants. | **CASE NO. 1:16-cv-01235-AWI-MJS (PC)**<br><br>**ORDER DISMISSING SECOND AMENDED COMPLAINT WITH LEAVE TO AMEND**<br><br>**(ECF No. 24)**<br><br>**THIRTY DAY DEADLINE** |

Plaintiff Albert Hayes, a prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on August 22, 2016. (ECF No. 1.) Plaintiff has declined Magistrate Judge jurisdiction. (ECF No. 11). No other parties have appeared.

Before the Court for screening is Plaintiff's second amended complaint. (ECF No. 24.) Plaintiff also asks the Court to take judicial notice of a number of supporting documents attached to his pleading. (ECF No. 25.)

For the reasons set forth below, the complaint shall be dismissed for failure to state a claim. Plaintiff will be granted one **final** opportunity to amend.

## I. Screening Requirement

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

## II. Pleading Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)), and courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). While factual allegations are accepted as true, legal conclusions are not. Iqbal, 556 U.S. at 678.

Under section 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted), but nevertheless, the mere possibility of misconduct falls short of meeting the plausibility standard, Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

**III.     Plaintiff's Allegations**

Plaintiff is currently incarcerated at the California Substance Abuse Treatment Facility ("CSTAF") in Corcoran, California, where his claims arose. Plaintiff brings this action against Scott Kernan, Secretary of the California Department of Corrections and Rehabilitation ("CDCR"); M. Voong, CDCR's acting Chief Inmate Appeal Officer; and J.P. Corral, CSATF Appeal Coordinator.[1] He sues each Defendant in his or her official capacity only.

Plaintiff's allegations may be summarized as follows:

Plaintiff is 69 years old, wheelchair-bound, of limited education, and deaf. He also has a speech impediment, has difficulty expressing himself in writing, and cannot communicate well using American Sign Language. He therefore needs staff assistance to understand and participate in prison administrative processes. In the past, CSTAF officials have provided Plaintiff with a staff assistant to aid him in understanding and participating in disciplinary hearings. Plaintiff must rely on poorly educated inmates to help him in drafting grievances.

Plaintiff submitted an administrative grievance, Log No. SATF-D-14-05729 ("the First Appeal"), to Defendant Corral complaining that his personal property was missing. On November 18, 2014, the grievance was returned with a notice stating it was rejected because it contained "pointless verbiage that the staff [could] not reasonably be expected to understand" to identify the issue under appeal. Plaintiff was also instructed to remove extraneous exhibits and handwritten documents from the appeal. Plaintiff complied and resubmitted the appeal, this time including a request for staff assistance in clarifying his appeal issue due to Plaintiff's difficulties expressing himself in writing, as outlined in sections 3084.1(c) and 3084.5(b)(1) of the California Code of Regulations.[2]

---

[1] Plaintiff's first amended complaint also named a Defendant J. Zamora, but he is not included in the second amended complaint.

[2] The regulations state:
"When an appeal indicates the inmate or parolee has difficulty describing the problem in writing or has a primary language other than English, the appeals coordinator shall ensure that the inmate or parolee receives assistance in completing and/or clarifying the appeal." Cal. Code Regs. tit. 15, § 3084.5(b)(1) (West).

3

On December 23, 2014, Corral canceled the First Appeal. He ignored Plaintiff's request for staff assistance. A few days later, Plaintiff submitted a second appeal to Corral, Log No. SATF-D-14-05729 ("the Second Appeal"), appealing the cancellation of his First Appeal. Corral rejected the Second Appeal for failure to attach a copy of the cancelled First Appeal documents. Plaintiff therefore resubmitted the Second Appeal with the First Appeal documents attached. Plaintiff again requested staff assistance. The Second Appeal was accepted by Corral at the second level of the review.

On February 20, 2015, Plaintiff received notice that his Second Appeal was cancelled on timeliness grounds, even though Plaintiff maintains that the Second Appeal was timely submitted. Plaintiff claims the Second Appeal was erroneously assigned a different number. Corral again ignored Plaintiff's request for staff assistance.

Plaintiff submitted the Second Appeal to Defendant Voong at the third level of review, complaining that it was wrongfully cancelled and alleging that Corral discriminated against Plaintiff on the basis of his disability by not assigning him a staff assistant. Plaintiff also complained that the Second Appeal was incorrectly numbered. Voong's response to the Second Appeal was that he could not address the disability discrimination issue or correct Corral's failure to provide staff assistance.

At some point, Corral threatened to place Plaintiff on the "black-list," meaning punish Plaintiff, thereby deterring Plaintiff from pursuing any further appeals.

Defendant Kernan, as the Secretary of the CDCR, has responsibility for managing and supervising Corral and Voong. Kernan is also responsible for ensuring inmates' constitutional and federal rights are protected. Plaintiff believes Kernan became aware of Corral and Voong's misconduct through Plaintiff's grievances, since Kernan "is the boss of the CDCR appeal system." Plaintiff also believes Kernan is responsible for monitoring the accommodation requests of disabled inmates, and knew or should have known of

---

"Department staff shall ensure that inmates and parolees, including those who have difficulties communicating, are provided equal access to the appeals process and the timely assistance necessary to participate throughout the appeal process." Cal. Code Regs. tit. 15, § 3084.1(c) (West).

4

Corral and Voong's discriminatory acts. Kernan is the individual best equipped to respond to Plaintiff's request for injunctive relief.

Plaintiff has suffered from mental stress, which as affected his ability to adequately complete his work assignment, due to being wrongfully deprived of a staff assistant.

Plaintiff alleges violations of Fourteenth Amendment and Title II of the Americans with Disabilities Act ("ADA")[3]. He seeks a preliminary and permanent injunction as well as declaratory relief.

## IV.     Discussion

### A.     Judicial Notice

Plaintiff asks the Court to take judicial notice of his appeals forms, appeals responses, and medical documents. (ECF No. 25.) The Court may take judicial notice of matters of public record and other facts not subject to reasonable dispute, Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001). The Court declines to take judicial notice of the facts contained within Plaintiff's appeals related documents at this time, however the Court will consider the allegations therein in screening Plaintiff's second amended complaint.

### B.     Linkage

Under § 1983, in order to state a claim against an official in his personal capacity, a plaintiff must demonstrate that each named defendant *personally* participated in the deprivation of his rights. Ashcroft v. Iqbal, 556 U.S. 662, 676-77 (2009); Simmons, 609 F.3d 1011, 1020-21(9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Plaintiff may not attribute liability to a group of defendants, but must "set forth specific facts as to each individual defendant's" deprivation of his rights. Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988); see also Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Liability may not be

---

[3] Plaintiff's first amended complaint expressly complained of violations of the Equal Protection Clause and the Due Process Clause. Here, Plaintiff does not specify whether his Fourteenth Amendment claim is meant to invoke Due Process, Equal Protection, or both. The Court evaluates Plaintiff's claims under each below. Plaintiff's first amended complaint also invoked § 504 of the Rehabilitation Act. He does not appear to repeat that claim herein.

imposed on supervisory personnel under the theory of *respondeat superior*, as each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 676-77; Ewing, 588 F.3d at 1235.  Supervisors may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Lemire v. Cal. Dept. of Corrections & Rehabilitation, 726 F.3d 1062, 1074-75 (9th Cir. 2013) ("A prison official in a supervisory position may be held liable under § 1983 . . . 'if he or she was personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation.'") (quoting Lolli v. Cty. of Orange, 351 F.3d 410, 418 (9th Cir. 2003)); Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark Cty. Sch. Bd. of Trs., 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997). Where a plaintiff alleges a defendant failed to intervene to stop the abuses of subordinate staff, he must allege that the supervisor defendant failed to intervene after being placed on notice of ongoing constitutional violations by subordinate staff.  Starr, 652 F.3d at 1205-08.

Here, Plaintiff attributes liability to Defendant Kernan based on his position as Secretary of the CDCR. He does not state how Defendant Kernan knew or should have known of the supposed violations committed by his subordinates or how Kernan even knew of Plaintiff's grievances. Plaintiff's claims against Kernan will be dismissed. He will not be granted leave to amend.

**B.     Official Capacity Claims**

Plaintiff sues all Defendants in their official capacities only and properly seeks only injunctive and declaratory relief. See Aholelei v. Dept. of Pub. Safety, 488 F.3d 1144, 1147 (9th Cir. 2007). However, in addition to being limited to prospective relief, a plaintiff pursuing defendants in their official capacities must demonstrate that a policy or custom of the governmental entity of which the official is an agent was the moving force behind the violation. See Hafer v. Melo, 502 U.S. 21, 25 (1991); Kentucky v. Graham, 473 U.S. 159, 166 (1985). That is, the plaintiff must establish an affirmative causal link between

the policy at issue and the alleged constitutional violation. See City of Canton, Ohio v. Harris, 489 U.S. 378, 385, 391-92 (1989); Van Ort v. Estate of Stanewich, 92 F.3d 831, 835 (9th Cir. 1996); Oviatt v. Pearce, 954 F.2d 1470, 1473-74 (9th Cir. 1992). Furthermore, although Plaintiff is permitted to pursue claims for injunctive relief against state actors in their official capacities, "[a] plaintiff seeking injunctive relief against the State is not required to allege a named official's personal involvement in the acts or omissions constituting the alleged constitutional violation." Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1127 (9th Cir. 2013) (citing Hafer, 502 U.S. at 25.) "Rather, a plaintiff need only identify the law or policy challenged as a constitutional violation and name the official within the entity who can appropriately respond to injunctive relief." Hartmann, 707 F.3d at 1127 (citing Los Angeles County v. Humphries, 562 U.S. 29, 35-36 (2010)).

Here, Plaintiff has not alleged the existence of any policy or custom that led to his injuries. All claims against Defendants in their official capacities will be dismissed. Plaintiff will not be granted leave to amend this claim.

### C.  Substantive Claims

#### 1.  Due Process

The Due Process Clause protects prisoners from being deprived of a liberty interest without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466 (1983). Liberty interests created by state law are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).

In the prison disciplinary context, a prisoner may be entitled to staff assistance where the proceedings are especially complex because prisoners have a liberty interest in remaining free from arbitrary government action without due process. Wolff, 418 U.S.

7

at 570. Such is not the case with the prison grievance process; the existence of an inmate appeals process does not create a protected liberty interest in a particular appeals process or procedures. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). Because there is no right to any particular grievance process, an inmate has no constitutional right to outside assistance in preparing his grievance forms. Plaintiff's argument that he does retain such a right appears to be based primarily on the applicable California regulations, see *infra* n. 1 & 2. However, California regulations do not dictate the outcome of the federal due process analysis. Nor do the Title 15 regulations governing the conduct of prison officials entitle an inmate to sue civilly for their violation. See e.g., Vasquez v. Tate, No. 1:10-cv-1876-JLT (PC), 2012 WL 6738167, at *9 (E.D. Cal. Dec. 28, 2012); Davis v. Powell, 901 F. Supp. 2d 1196, 1211 (S.D. Cal. 2012). Accordingly, Plaintiff's allegation that regulations were not followed, standing alone, fails to state a claim.

Prisoners do, however, retain a First Amendment right to petition the government through the prison grievance process. See Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995). Therefore, interference with the grievance process may, in certain circumstances, implicate the First Amendment. Such a claim would be based on the theory that interference with the grievance process resulted in a denial of the inmate's right to access to the courts, a right that includes petitioning the government through the prison grievance process. See Lewis v. Casey, 518 U.S. 343, 346 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977); Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995) (discussing the right in the context of prison grievance procedures). The right of access to the courts, however, only requires that prisoners have the capability of bringing challenges to sentences or conditions of confinement. See Lewis, 518 U.S. at 356–57. Moreover, the right is limited to non-frivolous criminal appeals, habeas corpus actions, and § 1983 suits. See id. at 353 n. 3 & 354–55. Therefore, the right of access to the courts is only a right to present these kinds of claims to the court. See id. at 354–55.

To make a claim for the denial of access to the courts, a prisoner must allege an actual injury. See id. at 349. "Actual injury" is prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a non-frivolous claim. See id.; see also Phillips v. Hust, 477 F.3d 1070, 1075 (9th Cir. 2007). Delays in providing legal materials or assistance which result in prejudice are "not of constitutional significance" if the delay is reasonably related to legitimate penological purposes. Lewis, 518 U.S. at 362.

Here, Plaintiff's rejected grievance complained about the loss of Plaintiff's personal property. There is no allegation that Defendants' processing of his appeals, or refusal to provide Plaintiff a staff assistant to file his appeals, denied Plaintiff access to the courts, as it is not apparent that Plaintiff ever filed or attempted to file a state or federal lawsuit challenging the loss of his property. Plaintiff's due process claim will be dismissed. As Plaintiff was previously advised of this deficiency, he will not be granted leave to amend.

### 2. ADA Claim

Title II of the ADA prohibits discrimination on the basis of disability. 42 U.S.C. § 12132 (West); Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002).

> To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his] disability."

Lovell, 303 F.3d at 1052; accord Simmons v. Navajo Cnty., 609 F.3d 1011, 1021-22 (9th Cir. 2010). To recover under the ADA, a plaintiff must demonstrate that he is disabled under the act. 42 U.S.C. § 12102(1)(A) (defining disability as "a physical or mental impairment that substantially limits one or more major activities of [an] individual"). A plaintiff must also demonstrate the existence of specific reasonable accommodations that the public entity failed to provide. Weinreich v. Los Angeles Cty. Metro. Transp. Auth., 114 F.3d 976, 978 (9th Cir. 1997). The "duty to provide reasonable accommodations under the ADA . . . arises when a policy discriminates *on the basis of disability."* Id.

9

(emphasis in original).

Plaintiff implies that his difficulty expressing himself is due to a combination of his hearing impairment and lack of education. Accepting as true Plaintiff's assertion that his hearing impairment, combined with his difficulties communicating verbally and in writing, constitute a disability, and accepting the premise that the prison grievance process constitutes a "service[e], program[], or activit[y]," the Court still finds Plaintiff has not established a violation of Title II of the ADA.

Here, Plaintiff was not prevented from filing grievances; indeed, he filed several, and appealed them to multiple levels. Nor was Plaintiff unable to understand the procedures for filing grievances—on the contrary, when instructed to remove or attach certain documents to his grievances, Plaintiff complied, and each time his grievance was rejected or cancelled, he appropriately appealed to the next level. Furthermore, it is clear that not all of Plaintiff's grievances were incomprehensible—Defendant Voong understood Plaintiff's request for a staff assistant, but simply replied that he could not do anything about it. Plaintiff claim arises from his belief that after his First Appeal was rejected for containing "pointless verbiage," he should have been appointed a staff assistant to help him "clarify" his issues. However, it is not clear what sort of accommodation Plaintiff sought from Defendants that would have helped him clarify his issues, be it a sign language interpreter, someone trained in communicating with deaf people, or simply an individual who could write clearly and concisely. Reasonableness of an accommodation "depends on the individual circumstances of each case, and requires a fact-specific, individualized analysis of the disabled individual's circumstances and the accommodations that might allow him or her to [enjoy meaningful access to the program.]"

While Plaintiff has previously been advised of these standards, the Court will afford Plaintiff a final opportunity to amend his ADA claim. Should Plaintiff choose to amend, he should plead more facts detailing the ways in which his disability affected his written communication, the specific type of accommodation he required, and how and

why Defendants were equipped to provide it.

### 3. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). To make an Equal Protection claim, an inmate must show either that Defendants intentionally discriminated against him on the basis of his membership in a protected class, see Hartmann, 707 F.3d at 1123; Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005), or that he received disparate treatment compared to other similarly situated inmates and there was no rational basis for that difference in treatment. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). An Equal Protection claim may also exist where a policy that is neutral on its face has a disproportionate, or "disparate," impact on an identifiable group. Village of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 264-66 (1977).

Disability is not a suspect class for Equal Protection purposes. Pierce v. Cnty. of Orange, 526 F.3d 1190, 1225 (9th Cir. 2008). In determining whether a disabled inmate is similarly situated to non-disabled inmates, the Court should ask "whether the disabled plaintiff is equally capable for the purpose at issue." Hansen v. Rimel, 104 F.3d 189, 190 (8th Cir. 1997), see also Clark v. State of California, No. C 96–1486 FMS, 1998 WL 242688, *4–5 (N.D.Cal.1998). Claims brought under any theory must satisfy the intent requirement, that is, the plaintiff must show that some discriminatory purpose underlies the policy. See Village of Arlington Heights, 429 U.S. at 264-66; Pierce, 526 F.3d at 1225.

Here, there is no evidence Plaintiff was discriminated against on the basis of his supposed disability. Plaintiff's equal protection claim will therefore be dismissed. He will not be given leave to amend.

### 4. Retaliation

For the first time, Plaintiff alleges that Corral "threatened" to "punish" Plaintiff, thereby chilling Plaintiff from pursuing further appeals. Plaintiff may intend to state a claim for retaliation.

11

It is well-settled that § 1983 provides for a cause of action against prison officials who retaliate against inmates for exercising their constitutionally protected rights. Pratt v. Rowland, 65 F.3d 802, 806 n. 4 (9th Cir. 1995) ("[R]etaliatory actions by prison officials are cognizable under § 1983.") Within the prison context, a viable claim of retaliation entails five basic elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his constitutional rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d at 1114-15; Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011); Brodheim v. Cry, 584 F.3d at 1269.

The second element focuses on causation and motive. See Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009). A plaintiff must show that his protected conduct was a "'substantial' or 'motivating' factor behind the defendant's conduct." Id. (quoting Sorrano's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989). Although it can be difficult to establish the motive or intent of the defendant, a plaintiff may rely on circumstantial evidence. Bruce, 351 F.3d at 1289 (finding that a prisoner established a triable issue of fact regarding prison officials' retaliatory motives by raising issues of suspect timing, evidence, and statements); Hines v. Gomez, 108 F.3d 265, 267-68 (9th Cir. 1997); Pratt, 65 F.3d at 808 ("timing can properly be considered as circumstantial evidence of retaliatory intent").

In terms of the third prerequisite, filing a complaint or grievance is constitutionally protected. Valandingham v. Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989).

With respect to the fourth prong, the correct inquiry is to determine whether an official's acts "could chill a person of ordinary firmness from continuing to engage in the protected activity[]." Pinard v. Clatskanie School Dist. 6J, 467 F.3d 755, 770 (9th Cir. 2006); see also White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000).

With respect to the fifth prong, a prisoner must affirmatively allege that "'the prison authorities' retaliatory action did not advance legitimate goals of the correctional

institution or was not tailored narrowly enough to achieve such goals." Rizzo v. Dawson, 778 F.2d at 532.

Plaintiff's simple allegation that Corral threatened to punish Plaintiff fails to state a claim. Plaintiff does not state when this threat was made, what sort of punishment was threatened, whether the threat was ever carried out, or even whether the threat was made in response to Plaintiff's grievances.

Plaintiff has not previously been advised of deficiencies of this possible retaliation claim, however. The Court will therefore grant Plaintiff one opportunity to amend.

## V.   Conclusion

Plaintiff's second amended complaint will be dismissed for failure to state a claim for which relief may be granted. Plaintiff will be given **one final opportunity to amend his retaliation and ADA claims** only, if he believes, in good faith, he can cure the identified deficiencies. Akhtar v. Mesa, 698 F.3d 1202, 1212-13 (9th Cir. 2012); Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  If Plaintiff amends, he may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

If Plaintiff files an amended complaint, it should be brief, Fed. R. Civ. P. 8(a), but under section 1983, it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights and liability may not be imposed on supervisory personnel under the theory of *respondeat superior*, Iqbal, 556 U.S. at 676-77; Starr, 652 F.3d at 1205-07.  Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. . . ." Twombly, 550 U.S. at 555 (citations omitted).

Finally, an amended complaint supersedes the original complaint, Lacey v. Maricopa County, 693 F.3d 896, 907 n.1 (9th Cir. 2012) (en banc), and it must be "complete in itself without reference to the prior or superseded pleading," Local Rule 220.

Accordingly, it is HEREBY ORDERED that:

1.   Plaintiff's complaint (ECF No. 24) is DISMISSED with leave to amend the

13

        ADA and retaliation causes of action only;

3.    The Clerk's Office shall send Plaintiff a blank complaint form along with a copy of the complaint filed February 6, 2017;

4.    Within **thirty (30) days** from the date of service of this order, Plaintiff must either file an amended complaint curing the deficiencies identified by the Court in this order or a notice of voluntary dismissal;

5.    If Plaintiff fails to comply with this order, this action will be dismissed, with prejudice, for failure to state a claim, failure to prosecute, and failure to obey a court order.

IT IS SO ORDERED.

Dated:   March 23, 2017         /s/ *Michael J. Seng*
                                                  UNITED STATES MAGISTRATE JUDGE